UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**SHANNON A. KENDRICK,**

    **Plaintiff,**

v.                                                                                    **Case No: 5:17-cv-244-Oc-GKS-PRL**

**COMMISSIONER OF SOCIAL
SECURITY,**

    **Defendant.**

_____

**REPORT AND RECOMMENDATION**[1]

Plaintiff appeals a decision denying her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Upon a review of the record, the memoranda, and the applicable law, I recommend that the Commissioner's decision be **AFFIRMED.**

    **I.  BACKGROUND**

For the sake of convenience, the administrative history, which is not in dispute, is copied from the Government's brief:

> Plaintiff filed an application for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI) on April 8, 2013, alleging an onset date of disability of April 13, 2012, in both applications (Tr. 207-214). After the applications were denied, an administrative law judge (ALJ) held a hearing and issued a decision on March 25, 2016, finding Plaintiff not disabled through the date of the decision (Tr. 18-37). The Appeals Council (AC) denied Plaintiff's request for review on April 21, 2017 (Tr. 1-6). Plaintiff has exhausted her administrative

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

remedies. This case is now ripe for review under 42 U.S.C. §§ 205(g), 405(g), and 1383(c).

(Doc. 20, p. 1-2).

Plaintiff was 45 years of age at the time of the ALJ's decision. (Tr. 18, 42). Plaintiff has a vocational college diploma in medical assisting and past work experience as a trailer truck driver and dump truck driver. (Tr. 43-46). Plaintiff alleged disability due to neck, back, shoulder, arm, hip, and leg pain, numbness in hands and arms, asthma, migraines, depression, and panic attacks. (Tr. 236).

Based on a review of the record and the testimony at the hearing, the ALJ found that claimant had the severe impairments of cervical and lumbar degenerative disc disease and asthma, and the non-severe impairment of depression. (Tr. 23-25). The ALJ found Plaintiff had the residual functional capacity (RFC) to perform light work with some limitations. The ALJ concluded:

> [t]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with these specific restrictions: she can frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs, but never climb ladders, ropes, or scaffolds; bilateral reaching can be done no more than frequently, but never overhead; avoid: overhead work, foot controls, work at heights, work with dangerous machinery, concentrated exposure to dust, fumes, gases, and other such pulmonary irritants, constant vibration, and constant temperatures over 90 degrees and under 40 degrees.

(Tr. 25).

Based upon this RFC, and considering the testimony of the vocational expert, the ALJ found that an individual with Plaintiff's RFC is capable of performing jobs that exist in significant numbers in the national economy, such as cleaner/housekeeper, advertising material distributor, and cashier. (Tr. 31). Accordingly, the ALJ determined that Plaintiff is not disabled. (Tr. 31).

## II. STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III.  DISCUSSION

Plaintiff raises three primary issues on appeal: (1) that the RFC finding is not supported by substantial evidence; (2) that the ALJ erred in rejecting the opinions of the treating physician and

treating chiropractor; and (3) that the ALJ's credibility finding is not supported by substantial evidence.

### A.     The ALJ's Residual Functional Capacity Finding

Plaintiff first argues that the ALJ's RFC finding is not supported by substantial evidence. Plaintiff contends that the RFC erroneously fails to incorporate Plaintiff's frequent absences for medical treatment and her need for an assistive device. Consequently, Plaintiff thus contends that the ALJ's step five finding is contrary to "unrejected vocational testimony" and Plaintiff's documented medical treatment. (Doc. 19, p. 17).

A claimant's RFC is the most that she can still do despite her limitations and is based on an evaluation of the relevant evidence in the record. See 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (a)(3), 416.920(e), 416.945(a)(1), (a)(3); Social Security Ruling (SSR) 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). The RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. Further, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Rather, the ALJ's decision must be sufficient to enable the court to conclude that the ALJ properly considered the claimant's condition as a whole. *Id.*

#### 1.     Evidence of Chiropractic Appointments and Hospitalization

Plaintiff first argues that the ALJ failed to properly consider the vocational expert's testimony that, if a hypothetical individual were off task more than 10 percent of the time, or missed more than two days per month, then no jobs would be available. (Doc. 19, p. 18). Plaintiff argues that Plaintiff's chiropractic treatments alone from May 4, 2012 through May 31, 2013

included a total of 42 treatment visits – an average of 3.5 visits a month. (Tr. 340-516, 914-63). Plaintiff thus concludes that her absences for one treatment provider alone would have exceeded the permissible absence threshold for over a year. (Doc. 19, p. 1). Plaintiff also argues that she was hospitalized between April 27 and May 21, 2014. (Tr. 755-60). Consequently, Plaintiff contends that the ALJ erred in failing to consider objective documentation of absences for medical treatment that would have precluded employment.

In response, Defendant accurately notes that "[s]cheduling conflicts due to obtaining treatment do not preclude working on a regular and continuing basis as defined by the Ruling." (Doc. 20, p. 5). Indeed, the plain language of SSR 96-8p contemplates "an equivalent work schedule," as opposed to a standard schedule of 8 hours a day, for 5 days a week. Further, Plaintiff's argument that her chiropractic appointments, averaging 3.5 visits a month, would necessarily require her to miss 10 percent of actual work time belies common sense, as well as the terms of SSR 96-8p. The number of medical appointments Plaintiff attended does not equate to a functional limitation caused by her impairments that would affect physical or mental capabilities. *See Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) (rejecting the idea that an excessive number of medical appointments rendered plaintiff disabled, and noting "nothing in the record indicates that [plaintiff] was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work.").

Similarly, Defendant accurately notes that Plaintiff's 2014 hospitalization was for pneumonia and infection, which was treated with antibiotics, as opposed to a condition that constituted a severe impairment for the purposes of establishing disability. (Doc. 20, p. 5). Indeed, records from Munroe Regional Medical Center confirm that the reason for Plaintiff's hospital admission on April 27, 2014 was treatment for pneumonia, and her diagnoses on admission were

left pneumonia versus possible pneumonitis, left pleural effusion, and bacteremia. (Tr. 755-760). Notably, the same records state, "[t]here is no urgent need for neurosurgical intervention at this time." (Tr. 756). As Defendant argues, the hospitalization was for pneumonia and infection, not for a chronic condition that constituted severe impairment and met the 12-month durational requirement for disability. (Tr. 755-760). The undersigned agrees that the ALJ did not err by finding Plaintiff could perform a reduced range of light work on a regular and continuing basis, in spite of the record evidence regarding her medical appointments and 2014 hospitalization for pneumonia.

### 2. Plaintiff's Use of an Assistive Device

Plaintiff also contends that the ALJ's RFC finding should have included the need to use a cane. (Doc. 19-22). Plaintiff argues that substantial evidence demonstrates that she needed a walker, cane or crutches since April 2014, and occasionally since May 2013. (Doc. 19, p. 22).

To support a finding that a hand-held assistive device, such as a cane, is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96–9p, 1996 WL 374185, at *7. Further, a prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity. See *Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir.2009) (holding that medical documentation establishing the need for a device does not require a prescription); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir.2002) (holding that a prescription for a cane without more was insufficient for a finding that the cane was medically necessary). Thus, under SSR 96–9P, Plaintiff must have presented medical documentation (1) establishing the need for her cane or other device and (2) describing

the circumstances for which it is needed. Without that showing, the ALJ was not required to include the use of a cane in Plaintiff's RFC.

The ALJ expressly discussed this issue in detail, and noted that "[t]here is some inconsistency in the record about the claimant's use of a cane." (Tr. 29). She noted Dr. Willis' observation in a letter dated October 23, 2015 that Plaintiff uses a cane consistently. (Tr. 28, 739). She found, however, that the "record as a whole does not support Dr. Willis' statements." (Tr. 28). She also observed that treating chiropractor Dr. Pitts noted that the hand-held device was not actually medically necessary (Tr. 29, 516), despite it being recommended due to frequent falls, and that Plaintiff did not use a cane during the consultative exam with Dr. Choksi, who also found normal gait and full strength throughout. (Tr. 29, 523-26). The ALJ thus expressly stated that the "record does not support that a cane—or any device – is required. Exams cited herein support claimant's full ADL's, normal gait and stance, and claimant's work rescuing horses. The record does not support the need for a cane." (Tr. 29).

The ALJ was accurate in her observation that there are inconsistencies in the record about claimant's use of a cane. (Tr. 29). On multiple occasions in 2014 and 2015, Dr. Willis' instructions included, "continue cane for stability and fall prevention." (Tr. 744, 748, 752, 881, 885, 889). But, although Plaintiff argues that use of a cane became medically necessary as her conditioned worsened over time, hospital records from September 2015 show that Plaintiff ambulated without difficulty. (Tr. 26, 798-799). Upon an exam in December 2015, Plaintiff showed only tenderness in palpitation in the left thigh, and no gait disturbances or need for an assistive device were noted. (Tr. 26, 790-793).

The record supports the ALJ's determination that Plaintiff has not presented the necessary medical documentation under SSR 96–9P to demonstrate that a hand-held assistive device was

needed. The record reveals that while Plaintiff often used a cane due to frequent falls and for stability, the cane use was not actually medically necessary (Tr. 516), and exams conducted in late 2015 revealed no gait disturbances. (Tr. 790-93, 798-99). Without the necessary showing, the ALJ was not required to include the use of a cane in Plaintiff's RFC. And, the evidence cited by the ALJ was substantial evidence upon which the ALJ could rely. *See Wright v. Colvin*, No. CV–313–079, 2014 WL 5591058, at *4-5 (S.D.Ga.2014) (affirming the ALJ's decision, where ALJ relied on the opinion of consultative examiner that use of cane was not medically necessary). Thus, the ALJ's decision not to include a restriction regarding cane use in the RFC is consistent with the record and supported by substantial evidence.

### B. The ALJ's Consideration of Opinion Evidence

Plaintiff next argues that the ALJ erred in rejecting the opinions of the treating physician, Dr. Willis, and treating chiropractor, Dr. Pitts. Plaintiff argues that the ALJ should have credited Dr. Willis' statements regarding Plaintiff's use of a cane, and her difficulty walking. Plaintiff also contends that the ALJ should have credited opinions of Dr. Pitts that were contained on two opinion forms. (Tr. 735-737). Plaintiff argues that the ALJ erred by according only limited weight to the opinions of Drs. Willis and Pitts, and instead according significant weight to the opinion of consultative examiner Dr. Choksi.

The law is clear that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Further, the opinions of treating physicians are entitled to substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Commissioner of Social Security*, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)). Good cause exists "when the: (1) treating physician's opinion was not

bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id*. at 1240-41.

### 1. Dr. Willis

Plaintiff first takes issue with the ALJ's statement regarding Dr. Willis' notes, that "[h]is notes show claimant has failed to seek greater medical improvement, in that she made little progress to obtain further treatment." (Tr. 28). Plaintiff contends that her inability to seek greater medical improvement was not volitional, but rather due to insurance and transportation issues. (Doc. 19, p. 23). Plaintiff contends that the ALJ erred in relying on the 2013 opinions of Dr. Choksi because they did not account for a significant worsening of her condition and a month-long hospitalization in 2014.

Despite Plaintiff's arguments, the undersigned finds that the ALJ indeed had good cause to discount the opinions of Drs. Willis and Pitts. For example, the ALJ found that the record as a whole did not support Dr. Willis' statements. (Tr. 28-29). The ALJ accurately noted that numerous exams showed Plaintiff retained 5/5 strength in the upper and lower extremities with full range of motion, no neurological deficits, negative straight leg raise tests, and normal gait and station. (Tr. 25-26, 523-26, 662, 791, 800, 811, 813-14, 892). Further, records from September 2015 show that Plaintiff ambulated without difficulty, and moved all extremities with no neurological deficits. (Tr. 26, 798-99). In May 2014, lumbar and cervical spine imaging showed only mild spinal stenosis and mild degenerative changes. (Tr. 25, 833, 835). In October 2013, consultative examiner Dr. Choksi found that Plaintiff had a normal gait and station and negative straight leg raise testing, as well as full strength of 5/5 throughout and 5/5 grip strength. (Tr. 27, 523-526). Exam findings from

Plaintiff's hospitalization in 2014 are consistent with intact range of motion, no muscle weakness, and no neurological deficits, although Plaintiff reported being unable to walk for several days. (Tr. 26, 810-11). Importantly, as late as December 2015, no gait disturbances or need for an assistive device were noted. (Tr. 26, 790-793).

The weight of the evidence is consistent with Dr. Choksi's opinion that Plaintiff did not have any walking limitations, as he also observed no gait abnormality, and that Plaintiff was able to carry out routine ambulatory activities. (Tr. 524). As to Plaintiff's argument that Dr. Choski's opinion should be disregarded because he examined Plaintiff before her condition worsened following her 2014 hospitalization, that argument is belied by the fact that examinations in September and December 2015 resulted in generally normal findings. (Tr. 790-93, 798-99). The undersigned agrees that evidence as a whole is consistent with the opinion of Dr. Choski. Conversely, the medical record as a whole does not support the opinions of Dr. Willis, and the ALJ did not err in discounting his opinions. *See Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991) ("[A treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.").

### 2.     Dr. Pitts

Plaintiff also contends that the ALJ erred by not crediting the opinion of treating chiropractor Dr. Pitts. Defendant correctly argues that chiropractors are not physicians and are not acceptable medical sources within the meaning of the regulations. See 20 C.F.R. §§ 404.1513(a)(d)(1). Thus, "an ALJ has no duty to give significant or controlling weight to a chiropractor's views because . . . a chiropractor is not a 'medical source' who can offer medical opinions." *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 745 (11th Cir. 2012) (citing 20 C.F.R. §§ 404.1513 and 404.1527(a)(2), and *Crawford*, 363 F.3d at 1160). Consequently, Dr. Pitts'

opinions were not medical opinions, and the ALJ was not required to give good reasons for discounting them.

Nonetheless, the ALJ did specifically consider Dr. Pitts' opinions and articulated reasons she gave them only little weight. Though the ALJ misattributed the first of Dr. Pitts' opinions to Sonia Lanadier, she noted that it lacked specific work restrictions, and was inconsistent with the record as a whole that showed Plaintiff was functioning at a higher level than the opinion indicated. (Tr. 27, 516). The ALJ further stated that the report was given little weight because it lacked specifics, was not supported by the record as a whole, and was not from an accepted medical source. (Tr. 27, 516). Likewise, the ALJ also considered Dr. Pitts' second opinion and articulated the reasons she gave it only little weight. (Tr. 27-28). The ALJ explained that Dr. Pitts' opinion that Plaintiff had less than sedentary functional ability was unsupported by objective findings in the record. (Tr. 28).   For the reasons explained above, including that substantial evidence supports the ALJ's decision to credit Dr. Choski's opinion and discount the opinions of Drs. Willis and Pitts, the undersigned finds that the ALJ did not err in evaluating the opinions of Drs. Wills and Pitts.

### C. The ALJ's Consideration of Plaintiff's Subjective Symptoms

Plaintiff next argues that the ALJ failed to provide a sufficient basis for the credibility determination. The ALJ concluded that Plaintiff was "not entirely credible for the reasons explained in this decision." (Tr. 29).

When a claimant alleges he or she has disabling subjective symptoms, the ALJ must determine whether the claimant has a condition that could reasonably be expected to cause the symptoms. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). If the ALJ determines the claimant has such a condition, the ALJ will evaluate the alleged symptoms' intensity and persistence and how

they limit the claimant's ability to work. *Id*. The ALJ will consider the claimant's testimony regarding his or her symptoms, including any inconsistencies between the testimony and the other evidence. 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4). An ALJ may reject a claimant's testimony of disabling symptoms as not credible if he provides "explicit and adequate reasons." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

In this case, the ALJ explicitly discussed Plaintiff's allegations regarding the severity of her symptoms, considered her medical records and her activities of daily living, and found her alleged symptoms were "not entirely credible." (Tr. 29). The ALJ even noted that activities alone were not consistent with her allegation of disability. This credibility finding is indeed supported by substantial evidence, including the opinion of Dr. Choski, the objective medical evidence as a whole, including hospital records and exam findings as discussed above, and Plaintiff's activities of daily living. Indeed, the ALJ properly considered Plaintiff's activities of daily living, and observed, "claimant helps her daughter with homework, does laundry, shops, visits neighbors and family, uses a telephone for calls and texts messaging, cares for pets, and prepares simple meals." (Tr. 28-29, 54). The record reveals that the ALJ conducted the correct analysis. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (stating and ALJ may consider a claimant's daily activities when evaluating subjective complaints).

The Court agrees that the ALJ had explicit and adequate reasons to reject Plaintiff's testimony regarding her symptoms and limitations. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The ALJ's decision should be affirmed because substantial evidence supports the ALJ's evaluation of Plaintiff's condition and her credibility determination regarding her subjective

complaints. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

Upon a review of the record, the Court finds that substantial evidence supports the ALJ's findings and the conclusion that the Plaintiff was not disabled.

## IV.     RECOMMENDATION

For the reasons stated above, it is respectfully recommended that the ALJ'S decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**DONE and ENTERED** in Ocala, Florida on July 9, 2018.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties